UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:21-cr-397-MSS-JSS

ABY RAUL RIVERA TORRES

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS**

The United States hereby opposes Defendant Aby Raul Rivera Torres's *Motion to Suppress Unlawful Seizure and Search of Cellphone* ("Motion to Suppress"). Doc. 27. In his motion, the defendant asserts that the government unlawfully searched his boat, exceeding the scope of the residential search warrant, with the aid of a private individual. Contrary to the defendant's claim, however, the United States did not search the defendant's boat and subsequently unlawfully seize his cellular phone. The Fourth Amendment does not apply to searches conducted by private individuals unless they are acting as an instrument or agent of the government. The government did not employ the use of private individual to conduct an unlawful search of the defendant's boat. For the reasons set forth below, the United States respectfully requests that the Court deny the defendant's motion.

# I. PROCEDURAL HISTORY

1. On November 13, 2021, the Federal Bureau of Investigation arrested the defendant on a federal criminal complaint, charging him with production of child pornography. Doc. 1.

2. The defendant appeared for his initial appearance on November 15, 2021. Doc. 10. The court ordered him detained. Doc. 11.

3. On December 15, 2021, a federal grand jury charged the defendant in a four-count indictment. Doc. 15. Count One charges the defendant with production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e). Counts Two, Three, and Four charge the defendant with distributing child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). *Id*.

4. The court granted the defendant's motion to continue and scheduled trial to commence during the April 2022 trial term. Docs. 24, 25. The defendant waived speedy trial through and including April 30, 2022. Docs. 25, 29.

5. The defendant filed the instant motion on February 4, 2022, thereby tolling the speedy trial clock. *See* 18 U.S.C. § 3161(h)(1)(D).

# II. FACTUAL BACKGROUND

*Initial Investigation and Surveillance of the Residence*

6. On or about July 26, 2021, the FBI Oklahoma City Division, Tulsa Resident Agency (Tulsa RA) arrested and charged an individual ("Defendant 1")

with child pornography related charges in the Northern District of Oklahoma. During a post-*Miranda* interview, Defendant 1 provided consent allowing agents to access his Kik account. An FBI Knoxville Online Covert Employee ("OCE") later accessed the Defendant 1's Kik account and observed membership to an administrator-only private Kik group with a title indicative of incestual child sexual abuse. There were several listed members of this group, to include the Kik account "Rainchexes".

7. On or about October 27, 2021, FBI Tulsa RA obtained a search warrant in the Northern District of Oklahoma for multiple Kik accounts who were members of the private Kik group, including the Kik account "Rainchexes".

8. On or about November 1, 2021, FBI Tulsa RA and FBI Atlanta reviewed the search warrant return received from Kik, which included a voluminous amount of data and information, and began identifying suspected producers and traders of child sex abuse material ("CSAM") on the Kik platform.

9. On or about November 12, 2021, FBI Tampa received information from the FBI Tulsa RA, they located CSAM images in the search warrant return of the account "Rainchexes" that had been posted to a Kik group by the Kik account "puchot" and a display name of "Pucho Torres" and received by "Rainchexes". Several of the child sex abuse images were posted while using the Kik live "camera" function, which typically indicates the image was produced live,

on that date, using the Kik application as the camera, instead of an image posted from a gallery of previously taken images. The Kik account "puchot" posted a series of images depicting a minor female child, approximately 8 to 12 years old, being sexually abused. In some of the images, the forearm of an adult male is visible. The arm has distinctive tattoos that are visible in the images.

10. On or about November 9, 2021, FBI Tulsa RA obtained an emergency disclosure request response from Kik for the subscriber information associated with the Kik account "puchot". The name on the account was registered as Pucho Torres, with an email address of pucho.torres@yahoo.com. Kik also provided records of several IP address logs between on or about October 10, 2021, and on or about November 9, 2021. An analysis of the IP logs indicated the user is accessing the internet through a mobile internet service, most commonly used through a cellular device, and residential based Wi-Fi connections.

11. On or about November 11, 2021, FBI Tulsa RA submitted an emergency disclosure to Charter Communications, who verbally provided subscriber information for the IP address 173.170.54.57, which was used to access the "puchot" Kik account on 15 separate occasions and as recently as November 7, 2021, at 20:21:13 UTC. The subscriber for the Charter Communications account is listed as C.E. and is registered at a residence in Spring Hill, Florida ("the residence").

12. FBI agents discovered that the defendant was residing at the residence with his apparent girlfriend (N.A.) and her minor children. Investigators learned that the defendant had a cellular phone assigned to Verizon Wireless.

13. On or about November 12, 2021, FBI Tulsa RA submitted an emergency disclosure request to Verizon Wireless for periodic location updates of the defendant's cellular phone number. A response from Verizon Wireless revealed the cellular device is within the radius of certainty of the residence.

14. On that same date, FBI agents conducted surveillance at the residence. The did not observe any vehicles but did see a boat parked in the driveway.

15. On November 13, 2021, FBI agents conducted surveillance of the residence while they awaited authorization of a search warrant. At approximately 1:00 p.m., agents observed the defendant inside the parked boat, which was secured to a trailer in the driveway, at the residence. Agents also observed three minor children standing outside the residence in the front yard near the boat.

16. FBI Special Agents John Sermons and Andrew Stiles approached the defendant at approximately 1:03 p.m. and ordered him out of the boat and detained him for further investigation. Agents observed that the defendant had tattoos that appeared to be similar to the tattoos on the adult male forearm depicted in the CSAM.

*Search of the Residence & Seizure of the Defendant's Cellphone*

17. On November 13, 2021, the FBI obtained three federal search warrants – for the residence, the defendant's person, and the defendant's cellphone. FBI Special Agent Michael Goodhue obtained approval of the search warrants at approximately 1:30 p.m. via telephone.

18. At the time law enforcement officers executed the search warrant, the defendant was at the residence alone with three minor children, including the minor victim in this case.

19. Sometime after 1:30 p.m., Agent Sermons and Agent Stiles asked the minor children if they had seen the defendant with a cellphone. The children said "yes" and went inside the house to show the agents where they had seen the defendant using his phone. The children told the agents to search the living room couches and recliners.

20. When the phone was not located, the minor victim shouted she knew where to look. The minor victim then ran outside to the boat parked in the driveway, climbed into the boat, and found the defendant's cellular phone in the same area agents had observed the defendant standing when they ordered him out of the boat. The minor victim then exited the boat and gave the phone to Agent Stiles. Agent Stiles then took the phone and gave it to Agent Sermons, who was in a vehicle interviewing the defendant.

21. FBI agents did not encourage or instruct the minor victim to retrieve the defendant's cellular phone from the boat.

### III.     MEMORANDUM OF LAW

#### A. The Fourth Amendment Does Not Apply to Searches by Private Individuals

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" A search by a private citizen generally does not implicate the Fourth Amendment. *See U.S. v. Jacobsen*, 466 U.S. 109, 104 (1984); *U.S. v. Simpson*, 904 F.2d 607, 609 (11th Cir. 1990); *U.S. Steiger*, 318. F.3d 1039, 1045 (11th Cir. 2003). The Fourth Amendment is only implicated if the private person is acting as an instrument or agent of the government. *Steiger*, 318 F.3d at 1045. To determine whether a private person is acting as an agent of the government, the court conducts a two-prong analysis: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement rather than to further his own ends." *Id*. As part of the inquiry into the first prong, the court also considers whether the government "openly encouraged or cooperated in the search." *U.S. v. Emile*, 618 Fed. Appx. 953, 955 (11th Cir. 2015) (quoting *U.S. v. Ford*, 765 F.2d 1088, 1090 (11th Cir. 1985).

In this case, no government agent instructed the minor children to locate or provide the defendant's cellular phone. The agents asked the children if they had seen the defendant with his cellphone. The children told agents to search the living room couch and recliner. When the device was not located, the minor victim had a "eureka moment", shouted she knew where the phone was, and took off running to the boat, which was parked in the driveway. Without encouragement, instruction, or guidance, the minor victim climbed into the boat, found the phone, and gave it to law enforcement officers. Moreover, the agents did not cooperate or participate in the search. They did not enter the boat or instruct the minor victim on what to do or where to search to locate the device.

## IV.  CONCLUSION

The law is clear that Fourth Amendment protections are not triggered in a search conducted by a private individual who is not acting as an agent for the government. The United States did not engage in an unlawful search of the defendant's boat. Without encouragement or cooperation, the minor victim independently searched the defendant's boat for his cellphone. Acting as a private individual, the minor victim subsequently exited the boat and provided it to law enforcement.

WHEREFORE the United States respectfully requests this Court enter an order denying the defendant's Motion to Suppress. Doc. 27.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: *s/ Lisa M. Thelwell*
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6103
E-mail: lisa.thelwell@usdoj.gov

U.S. v. Rivera Torres	Case No. 8:21-cr-397-MSS-JSS

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Adam Nate, Esq.

By: *s/ Lisa M. Thelwell*
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6103
E-mail: lisa.thelwell@usdoj.gov